# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

GLEN DANIEL CAPLE,

                Plaintiff,

      v.

PA GENERAL ASSEMBLY, PNC BANK,
and KEYBANK,

                Defendants.

CIVIL ACTION NO. 1:19-CV-01435

(MEHALCHICK, M.J.)[1]

## MEMORANDUM OPINION

Plaintiff Glen Daniel Caple commenced this action by filing a *pro se* complaint, on August 19, 2019, against the Pennsylvania General Assembly, PNC Bank, and KeyBank for fraud in violation of 18 U.S.C. § 1341 ("Frauds and swindles"). (Doc. 1).[2] Presently before the Court are the defendants' respective motions to dismiss the claims against them (Doc. 6 (General Assembly); Doc. 9 (PNC); Doc. 11 (KeyBank)) and Caple's motion for summary judgment (Doc. 18).

For the reasons that follow, all three motions to dismiss (Doc. 6; Doc. 9; Doc. 11) are **GRANTED** without prejudice to Caple's filing an amended complaint, and Caple's motion

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the undersigned's jurisdiction to adjudicate all pretrial and trial proceedings relating to the action. (Doc. 22).

[2] Although his two-page complaint contains very little in the way of factual allegations and bases for liability, Caple submitted another document – styled as a "Memorandum of Law" – contemporaneously with the filing of his complaint. (Doc. 2). In that submission, Caple expands upon his allegations and the purported bases for his liability. Because Caples "has filed his complaint *pro se*, [the Court] must liberally construe his pleadings . . . ." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). In doing so, the Court will consider the operative complaint as including the allegations in the complaint itself together with those set forth in Caple's memorandum submitted as Doc. 2.

for summary judgment (Doc. 18) is **DENIED**.

## I. BACKGROUND

Caple's allegations of wrongdoing begin with the conduct of a non-party: David Wells, a former treasurer of soccer and lacrosse clubs in the Borough of Hanover in York County, who was charged with embezzling funds from the clubs, pleaded guilty to theft by failure to make required disposition of funds received, *see* 18 Pa.C.S. § 3927(a), and in July 2018 was sentenced to 20 years' probation and ordered to pay restitution for the embezzled funds and to refrain from holding a position as the financial officer of a sports club. (Doc. 2, at 1-2); *Commonwealth v. Wells*, CP-67-CR-0003428-2017 (York Cnty. Ct. Com. Pl.).[3] Caple and his father had been mowing turf grass for the Hanover Soccer Club (HSC) since 2008, payment for which was made from Wells, as HSC's treasurer, to Caple's father, who then paid Caple for the work completed. (Doc. 2, at 2).

Over the course of the Caples' several-year employment with HSC, Caple's father received many checks that he was unable to cash at his financial institution – PNC – due to the payor's (i.e., HSC) insufficient funds. (Doc. 2, at 2-3, 6). When PNC declined the checks for this reason, Caple took it upon himself to investigate the reasons for the insufficient funds; he contacted and visited the HSC treasurer's office and visited the Counsel Trust Company, an entity for which Wells worked a financial advisor, in Hanover. (Doc. 2, at 2, 9). The HSC treasurer's office would reassure the Caples that they could cash the checks "in a few days"

---

[3] In evaluating a motion to dismiss, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court takes judicial notice of Wells's criminal proceedings here for the sole purpose of presenting a complete background of the events giving rise to Caple's complaint.

or notified the Caples when the checks would be cashable. (Doc. 2, at 3). It often took several weeks for the Caples receive payment for services rendered to HSC and then only after confronting Wells in person on the soccer field. (Doc. 2, at 3).

Because mowing for HSC provided Caple with his "main, steady source of income throughout most of these years," HSC's failure to timely pay him caused him financial hardship because he was unable to pay his bills at times. (Doc. 2, at 4). He and his "family . . . had to endure years of unwarranted harassing phone calls by collection agencies. And over a period of several years [his] financial history and credit worthiness was egregiously harmed." (Doc. 2, at 7). During this period, Caple "took many actions" including contacting Pennsylvania's Office of Attorney General, along with several other state attorneys general offices. (Doc. 2, at 7). One Boston attorney's office called Caple's father daily for about one year, threatening him despite that his father had no credit card accounts or unpaid debts. (Doc. 2, at 7). He even contacted a United States Senator's office, which forwarded him to the Consumer Financial Protection Board. (Doc. 2, at 11).

Caple's father passed away in January 2018, following which Caple received a "Pennsylvania Inheritance Tax Bill of approximately $6,000.00." (Doc. 2, at 4). Caple has been forced to sell personal items to make ends meet. (Doc. 2, at 4-5, 9). "It has been only with the help of family funding, and more recently the selling of [his] [father]'s favorite tractor . . . that [he] h[as] been unable to keep [his] head above water in paying bills to prepare the estate for settlement." (Doc. 2, at 9-10).

In May 2019, Caple applied for a $15,000 loan from PNC, in part to pay for property taxes on his father's estate. (Doc. 2, at 10). PNC rejected the application in writing due to "a credit score of 536, and a 'serious delinquency' on a credit report . . . ." (Doc. 2, at 10). After

his application was denied, Caple obtained his credit reports and discovered that a 2003-originated KeyBank student loan reflected an outstanding owed amount of $7,000. (Doc. 2, at 10). Caple, however, had paid the entire KeyBank student loan amount in periodic payments made between 2005 until 2018. (Doc. 2, at 10).[4] Caple contacted KeyBank (and its related entities) to determine how KeyBank arrived at its figures, but he was met with "'canned' answers" or "no answers at all." (Doc. 2, at 14). Another possible delinquency for which his application was denied, Caple noted his credit history reflects that in 2011, during a period of hardship when Caple was unable to keep up with timely payments, Bank of America, N.A., closed his long-standing credit card account with the Aircraft Owners and Pilots Association. (Doc. 2, at 11).

At present, Caple's "credit worthiness is destroyed through 2028, as per the credit reporting agencies Transunion, Equifax, and Experian." (Doc. 2, at 12). He refuses to pay "usury rates for credit when [he] and [his] family have been the victims of financial fraud." (Doc. 2, at 12-13).

## II. MOTIONS TO DISMISS

All three defendants move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Additionally, the General Assembly and PNC move for dismissal based on lack of subject matter jurisdiction under Rule 12(b)(1), and the bank defendants move for dismissal based on Rule 9(b) for Caple's failure to meet the heightened pleading

---

[4] According to calculations performed by Caple, who has some experience regarding computations of loan amortization rates, provides calculations according to which he should have paid, at the most, $37,997.78 on the KeyBank student loan, whereas Caple's payments on the loan totaled over $38,000. (Doc. 2, at 14). While Caple did obtain three 18-month forbearances on his loan, he made many payments ahead of schedule and, in fact, believes he is owed a refund. (Doc. 2, at 15).

requirement for fraud causes of action.

A. LEGAL STANDARDS

### 1. Rules 12(b)(6) and 9(b)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although a court must accept the fact allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully

pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

In addition to these pleading requirements, under Rule 9(b), plaintiffs "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs asserting fraud must therefore ensure that the pleadings in their complaints meet these "heightened pleading requirements." *Meade v. Kiddie Acad. Domestic Franchising, LLC*, 501 F. App'x 106, 108 (3d Cir. 2012) ("We have reviewed the complaint, and agree with the District Court that Meade failed to specifically identify any wrongful act or omission by either CIT Group or its employees. Therefore, for substantially the same reasons provided by the District Court, Meade failed to comply with the pleading requirements of Rule 9(b).").

### 2. Rule 12(b)(1) Standard

"Under Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd*, 39 F.3d 61 (3d Cir. 1994).

Legal insufficiency of a claim generally does not eliminate a federal court's subject-

matter jurisdiction. *Growth Horizons, Inc. v. Delaware Cnty.*, Pa., 983 F.2d 1277, 1280 (3d Cir. 1993) (collecting cases). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). Federal courts may hear cases "in which a well-plead complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 28 (1983).

Courts considering a jurisdiction-based dismissal have two standards in evaluating whether jurisdiction is proper, with the applicable standard determined by the nature of the challenge to jurisdiction itself. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (in reviewing a Motion to Dismiss pursuant to Rule 12(b)(1), this Court must distinguish between facial attacks and factual attacks). "[J]urisdictional challenges take two forms: (1) parties may make a 'factual' attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdiction; or (2) they may assert a 'facial' challenge, which assumes the veracity of the complaint's allegation but nonetheless argues that a claim is not within the court's jurisdiction." *Corman v. Torres*, 287 F. Supp. 3d 558, 566 (M.D. Pa. 2018) (citing *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F. 3d 99, 105 (3d Cir. 2015)). If reviewing a factual attack, a court may consider evidence outside the pleadings. If a facial attack, a court "considers the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp. 3d 278, 289 (M.D. Pa. 2018) (citing *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

B. General Assembly's Motion to Dismiss

Caple asserts the Court's diversity jurisdiction over his claims against all defendants. (Doc. 1, at 1). The General Assembly does not directly address diversity jurisdiction, presumably because it is a government entity of Pennsylvania and diversity therefore does not exist, and instead argues that the federal statute upon which Caple bases his claims – 18 U.S.C. § 1341, pertaining to prohibitions on mail fraud – is a criminal statute, violations of which, even if substantiated, do not give rise to a standalone civil cause of action. *See, e.g., Ferdinand Drexel Inv. Co. v. Alibert*, 723 F. Supp. 313, 327 (E.D. Pa. 1989), *aff'd*, 904 F.2d 694 (3d Cir. 1990) ("Mail fraud under [§ 1341] is a criminal offense, not a civil cause of action. It is one of the predicate acts listed in the RICO statute . . . ."); *see also Jones v. TD Bank*, 468 F. Appx. 93 (3d Cir. 2012) ("To the extent that Jones attempted to sue under the Federal Mail Fraud statute, 18 U.S.C. § 1341, he lacked a private right of action to do so.").

While Caple has pleaded facts insufficient to confer diversity jurisdiction, and though his stated basis for relief, i.e., § 1341, does not give rise to federal question jurisdiction, the Court must review his complaint to determine whether it supports any other actionable claims. *See, e.g.*, *Dluhos*, 321 F.3d at 369 ("[B]ecause Dluhos has filed his complaint *pro se*, we must liberally construe his pleadings, and we will apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name."). Caple seeks $2,700,000 from General Assembly, "on grounds of moral turpitude, for the loss of trust and good faith in the Pennsylvania legal system." (Doc. 2, at 12). He further alleges that "[t]he state of Pennsylvania through its actions and judgments . . . did allow a man [i.e., Wells] found guilty of stealing large sums of money, embezzling, and abusing a position of public trust, and with the aid of financial influence by others, to (essentially) buy his way out of going to jail for

fraud and other financial crimes committed over several years." (Doc. 2, at 12).

The Court can discern no colorable federal claim within Caple's allegations. He appears to argue that he is entitled to damages from the state legislature for the conduct of the York County Court of Common Pleas in handling Well's criminal case, which concluded with his acceptance of a guilty plea. He alleges no facts specifically aimed at the General Assembly, and he offers no facts establishing injuries *he* suffered as a result of the York County plea itself. Indeed, he alleges no non-conclusory facts whatsoever. Regarding his stated claim for fraud, he has alleged no fraudulent conduct on the part of the General Assembly, much with the requisite particularity under Rule 9(b). Accordingly, the Court lacks jurisdiction over Caple's claim, which must therefore be dismissed as to the General Assembly, and will therefore grant the General Assembly's motion to dismiss.

As an aside, although not dispositive, to the extent Caple asserts constitutional violations against the General Assembly under 42 U.S.C. § 1983, the "Supreme Court has held that state legislators are entitled to 'absolute immunity' from suit under § 1983 for their legislative activities." *Maines v. Rendell*, No. CA 11-70, 2011 WL 6153093, at *3 (W.D. Pa. Dec. 9, 2011) (granting General Assembly's motion to dismiss based on absolute immunity) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998), and *Fowler-Nash v. Democratic Caucus of Pa. House of Representatives*, 469 F.3d 328, 331 (3d Cir.2006)).

C.   PNC'S MOTION TO DISMISS

PNC submits that Caple has failed to establish subject matter jurisdiction over any claims against PNC under Rule 12(b)(1) and that Caple's allegations do not state a claim upon which relief can be granted under Rules 9(b) and 12(b)(6). On the face of his complaint, Caple has failed to establish that the Court has jurisdiction to hear his claim against PNC. As already

noted, Caple has failed to state a claim under 18 U.S.C. § 1341 because no civil action can be based on violations of that statute. While Caple asserts diversity jurisdiction as the basis upon which the Court can preside over this action, Caple indicates that PNC is based in Pittsburgh, Pennsylvania, and that he, too, resides in Pennsylvania. Therefore, the complaint lacks allegations establishing diversity and, in fact, compels a finding that the parties are not diverse.

Moreover, as presently pleaded, the complaint does not satisfy Rules 9(b) and 12(b)(6). A review of Caple's complaint reveals two potential bases for liability: PNC failed to investigate Wells after declining check after check for insufficient funds, and PNC denied Caple's loan application due to his credit score and a serious delinquency, which he argues was incorrectly reported by the credit reporting agencies. While the crux of Caple's claim is for fraud, he does not allege any fraudulent conduct on behalf of PNC, and the Court is not aware of a federally imposed duty that would require banks to investigate bank accounts in the face of checks that are temporarily declined for insufficient funds but ultimately honored and deposited. Simply put, Caple's allegations are not that "the bank intended . . . to defraud [Caple]." *Cf. Chrysler Credit Corp. v. First Nat. Bank & Tr. Co. of Washington*, 746 F.2d 200, 208 (3d Cir. 1984) ("Pennsylvania law does not impose an affirmative duty on a bank to disclose to the world a customer's financial condition."). Particularly given Rule 9(b)'s heightened pleading requirements, the Court finds no basis for a colorable claim and must therefore grant PNC's motion to dismiss.

### D.  KEYBANK'S MOTION TO DISMISS

Initially, Caple has failed to establish that the Court has jurisdiction over his claim against KeyBank. Caple indicates that KeyBank is based in Cleveland, Ohio, and that he resides in Pennsylvania, satisfying diversity of citizenship for pleading purposes. (Doc. 1-1, at

1).[5] Regarding the amount-in-controversy requirement, however, Caple seeks $1 from KeyBank for its unwillingness or inability to "discuss how a loan is repaid in a fair and just matter," leading Caple to "believe that something nefarious is happening." (Doc. 2, at 14-15). Because distinct claims against multiple defendants cannot be aggregated to satisfy the amount-in-controversy requirement of diversity jurisdiction, Caple cannot rely on the significantly higher claims for damages against the other two defendants. *See, e.g.*, *Travelers Indem. Co. of Illinois v. Clark*, No. CIV. A. 94-CV-1675, 1994 WL 384722, at *2 (E.D. Pa. July 19, 1994). There are no allegations suggesting joint liability such that Caple could aggregate his claims for the purpose of establishing diversity jurisdiction. *See DePrizio v. LTS Realty Co.*, No. 3:05-CV-02273, 2006 WL 8449808, at *4 (M.D. Pa. Aug. 24, 2006) ("A district court will have subject matter jurisdiction where the aggregate amount in controversy meets the jurisdictional requirement and the several claims are against multiple defendants who are jointly liable to the plaintiff.").

Caple's claim is therefore jurisdictionally defective, unless, that is, his complaint contains a colorable claim based on a federal question. Unfortunately, as the Court has already noted, *supra*, Caple's reliance on 18 U.S.C. § 1341 as a basis for liability is misplaced because that statute does not give rise to civil liability, and Caple has nevertheless failed to allege facts establishing the criminal violation prohibited thereby. There does not appear to

---

[5] Though KeyBank does not invoke Rule 12(b)(1), "the Court is permitted to raise the issue of subject matter jurisdiction *sua sponte*." *Kistler v. Lackawanna Cty. Tax Claim Bureau*, No. 3:17-CV-01672, 2017 WL 9532897, at *1 (M.D. Pa. Sept. 22, 2017) (quoting *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995), for the proposition that "[f]ederal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua sponte* . . ."), *report and recommendation adopted*, No. CV 3:17-1672, 2017 WL 4684588 (M.D. Pa. Oct. 19, 2017)

be any other basis on which to conclude that Caple has raised a federal question sufficient to confer jurisdiction upon the Court. He appears to seek relief for KeyBank's failure to discuss how it computes loan payoffs and because he believes that KeyBank is engaged in nefarious behavior. Again, if it is fraud that Caple wishes to assert, he has fallen short of alleging, in a non-conclusory manner, fraudulent conduct on the part of KeyBank. If there is a colorable basis for liability, it is not apparent to the Court at this time. However, Caple will be granted leave to amend his complaint.

### E. LEAVE TO AMEND

The Third Circuit has instructed that district courts generally must permit a curative amendment if a complaint filed *pro se* is vulnerable to dismissal for failure to state a claim, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). As Caple's complaint in its current form does not state any claims over which the Court has jurisdiction or upon which relief can be granted against any defendant, the Court is compelled to dismiss it. However, to preserve Caple's rights as a *pro se* litigant, the Court will grant him leave to file an amended complaint setting forth his factual allegations and legal claims in a manner that can be reviewed by the Court and, if necessary, answered by the defendants. Caple is advised that the amended complaint must be a pleading that **stands by itself without reference to the original complaint**. *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992) (emphasis added). By granting leave to file an amended complaint, the Court is *not* acknowledging the viability of any of the causes of action asserted by Caple. Indeed, it does not appear that any permutation of Caple's allegations can overcome, for example, the bar to suit that absolute immunity imposes based on Caple's allegations against the General Assembly, Caple's apparent inability to set forth facts giving

rise to a *prima facie* case of fraud, and the Court's lack of subject matter jurisdiction. If he should choose to file an amended complaint, Caple should do so with due regard to the deficiencies in his original complaint, and he should base his allegations on an honest assessment of the facts he can allege in the context of federal court pleading requirements and the applicable substantive standards.

## III.   MOTION FOR SUMMARY JUDGMENT

Because the Court has determined that Caple's complaint, as presently pleaded, falls short of establishing a claim upon which relief can be granted, Caple's motion for summary judgment is denied.

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss (Doc. 6; Doc. 9; Doc. 11) are **GRANTED** without prejudice to Caple's right to file an amended complaint within 30 days of the Order filed concurrently with this Memorandum Opinion, or on or before **May 13, 2020**. Caple's motion for summary judgment is **DENIED**.

An appropriate Order will follow.

**BY THE COURT:**

Dated: April 13, 2020

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**